UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEONARD TERRY LICHT, | § | |
| | § | |
|    *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-1018-X |
| | § | |
| TINA LING and LUXKEY.NET, | § | |
| | § | |
|    *Defendants.* | § | |

### ORDER GRANTING PRELIMINARY INJUNCTION

Before the Court is Plaintiff Leonard Licht's Motion for Preliminary Injunction, Asset Freeze, and Other Equitable Relief against Defendants Tina Ling and Luxkey.net ("Luxkey") (collectively, "Defendants"). [Doc. 4].

The Court held a preliminary injunction hearing on the motion. In compliance with Court orders, Licht timely served notice of the hearing on Defendants via WhatsApp.[1] However, the Defendants failed to appear. At the hearing, which was necessarily non-adversarial, Licht met his evidentiary burden to justify a preliminary injunction. For the reasons below, and for the reasons stated at the preliminary injunction hearing, the Court **GRANTS** the motion and **ORDERS** the relief described below. The preliminary injunction shall continue until trial.

---

[1] Doc. 22. Licht confirmed at the hearing that he complied with the Court's order and supplied evidence demonstrating that Defendants received the WhatsApp messages containing notice of the hearing. As addressed in prior orders, the high mobility of the asset and difficulty in serving Defendants through traditional means forced the Court to allow service via WhatsApp, the messaging service Defendants asked Licht to communicate on.

1

Additionally, the Court **ORDERS** the clerk to return Licht's bond in full.  If any third party suffers an injury as a result of the asset freeze from this ruling, that injured third party may seek relief through traditional judicial means.

## I. Factual Background

These facts, gleaned from the complaint, motion, supporting affidavit, and Licht's testimony at the preliminary injunction hearing, are necessarily framed as being from Licht because the Defendants have failed to appear.  In June 2021, a few years after his wife's death, Licht received a Facebook message from a woman named Tina Ling.  Licht and Ling conversed for several months via the Facebook HangOuts app.  Eventually, at Ling's urging, Licht agreed to become a passive investor in a cryptocurrency mining pool—or so he thought.  Ling was actually mining Licht, not crypto.  Ling introduced Licht to Luxkey, an online enterprise that she assured him would safely facilitate his investment and ensure his principal was never at risk. Ling instructed Licht about downloading the Coinbase app, which displayed what appeared to be the yields of his mining investments.  Encouraged, Licht continued investing.

Once Licht had invested $500,000 in Luxkey, things started to go south.  Ling told Licht—for the first time—that he had to invest at least $2,000,000 or he'd risk being charged fees and fines.  Licht complied.  Then, Ling and others at Luxkey told Licht he owed a "miner's fee" of 20%, or $400,000. Worried, Licht paid it.  Ling offered to loan Licht $100,000 to pay the fee and Licht accepted.  Then, others at Luxkey admonished Licht that such a loan was not permitted and fined him another

$300,000.  When Licht contacted Luxkey about the fine, he was told that he owed an additional $400,000, but at that point, having invested almost all of his life savings, Licht could pay no more.

At this point, things took an even darker—if sadly predictable—turn.  Luxkey informed Licht that his funds would be frozen and distributed to the other investors in the cryptocurrency mining pool.  His Coinbase wallet was remotely accessed, and his funds were transferred away.  It is now clear to Licht that the "mining pool" never existed, Licht was the only member, and the entire enterprise was designed to maximize Licht's investment before stealing it.

All told, Licht invested $2,755,000 in Luxkey and he lost every dollar.  In his declaration, Licht states that he never would have invested in Luxkey if he'd known that his "principal would be at risk, that there would be minimum investment amounts, or that there would be fines or other charges."[2]

Licht hired a "blockchain forensics and cybercrime investigative firm" to trace the stolen funds.[3]  The investigation yielded the addresses of several specific cryptocurrency wallets located across various cryptocurrency exchanges or platforms.

Licht sued Ling and Luxkey, alleging (1) violation of Section 10(b) and 10b-5 of the Securities Exchange Act of 1934, (2) fraud, (3) conversion, and (4) violation of the Texas Theft Liability Act.[4]

---

[2] Doc. 6 at 5.

[3] *Id.* at 11.

[4] Doc. 1 at 4–6.

Worried the money will dissipate if not quickly seized, Licht moved for an emergency *ex parte* TRO and asked the Court to (1) freeze the wallets identified in the investigation, (2) prohibit "the movement, alteration, and destruction of books, records, and accounts related to [Licht's] investments or the . . . wallets," and (3) allow expedited discovery.[5]

On May 10, 2023, the Court granted Licht's request for a fourteen-day *ex parte* TRO. Fourteen days later, the Court granted Licht's request to extend the TRO for fourteen additional days pursuant to Federal Rule of Civil Procedure 65 and Licht's showing of good cause for the extension. On June 7, 2023—twenty-eight days after the Court issued the TRO—the Court denied Licht's request for a second fourteen-day extension, which Rule 65(b)(2) does not permit, and the TRO expired.

On June 20, 2023, the Court held a hearing on Licht's motion for a preliminary injunction, requesting the same relief as the TRO, and the Court found that Licht met his evidentiary burden to obtain a preliminary injunction.

## II. Legal Standard

An applicant seeking a preliminary injunction must show: "(1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) their substantial injury outweighs the threatened harm to the party whom they seek to enjoin, and (4)

---

[5] Doc. 5 at 8–9.

4

granting the preliminary injunction will not disserve the public interest."[6] The applicant "bears the burden of persuasion on all four factors."[7]

### III. Analysis

The Court examines each of the four preliminary injunction elements before turning to the appropriate relief.

#### A. Preliminary Injunction Elements

The Court begins with Licht's likelihood of success on the merits. In Texas, "[c]onversion is defined as the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights."[8] Defendants' actions met this definition because Defendants seized Licht's investment without his consent or any legal basis and transferred it to their various wallets, which are under Defendants' dominion and control. Since those acts were in denial of and inconsistent with Licht's rights to his investment, which was his own property, the Court finds that Licht is likely to succeed on the merits of his conversion claim.[9]

Next, the Court finds that Licht will suffer irreparable harm if the Court denies his request. Defendants currently have possession of his life savings, and all of his money is precariously parceled out among several wallets that appear to be completely under Defendants' control. Without the Court's intervention, Defendants

---

[6] *City of El Cenizo, Tex. v. Texas*, 890 F.3d 164, 178 (5th Cir. 2018).

[7] *Piedmont Heights Civic Club, Inc. v. Moreland*, 637 F.2d 430, 435 (5th Cir. Unit B 1981).

[8] *Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997).

[9] Because Licht has demonstrated a likelihood of success on the merits of his conversion claim, the Court need not, and does not, conduct any analysis at this time on the likelihood of Licht's success on the merits of his remaining three claims. The Court reserves all judgment for such weighty matters until the merits stage of this case.

could continue to launder away Licht's money to further thwart traceability and prevent potential recovery, which would inflict irreparable harm.

As to the third element, Licht's threatened injury outweighs any damage that an injunction might cause to Defendants. Licht asks the Court to freeze the wallets that his funds have been traced to, which would certainly be disruptive to the owners of the wallets—some of whom may not actually be perpetrators of this particular scheme—and perhaps cause some financial inconvenience. But because all the wallets have at least *some* of Licht's money in them, and forensic investigation cannot narrow down the ownership any further without alerting the owners and risking further laundering, the potential damage to Defendants pales in comparison to the threat to Licht if the Court denies this relief.

Finally, an injunction would serve the public interest because it will dissuade would-be fraudsters from stealing, laundering illegal proceeds, and preying on Americans like Licht. It will also prohibit Defendants from profiting from their scheme, ensuring they lack resources and incentives to perpetrate similar schemes in the future. And to the extent the Court's order will freeze wallets owned by people other than Defendants, that inconvenience does not outweigh the public interest in stopping Defendants' unlawful scheme, and the temporary freeze is justified because Licht's money has been traced to every account he asks the Court to freeze until trial.

B.    Relief

Licht asks the Court to (1) freeze twenty cryptocurrency wallets; (2) prohibit the movement, alteration, or destruction of books, records, and accounts related to those wallets; and (3) allow expedited discovery.

Cryptocurrency is new, so cryptocurrency fraud is also new. Courts are beginning to define this novel area, but the law is still developing. Several district courts across the nation have issued orders freezing cryptocurrency assets in response to theft or fraud.[10]

The Court finds that freezing the alleged fraudsters' wallets is the proper relief and is the only feasible way to prevent irreparable harm to Licht at this stage.

Licht's forensic investigator filed a report that details the rationale behind freezing the specific twenty wallets in question, which span six different cryptocurrency exchanges or platforms.[11] After reviewing the investigator's extensive qualifications and experience, as well as the methods and conclusions outlined in the report, the Court agrees that the twenty wallets received money stolen from Licht.[12] The investigator concedes the impossibility of knowing which accounts have remaining balances, admits that some may be fraudulently registered or belong to

---

[10] *See, e.g.*, *Astrove v. Doe*, No. 22-CV-80614-RAR, 2022 WL 2805345, at *2 (S.D. Fla. June 17, 2022) (collecting cases in which district courts froze cryptocurrency assets).

[11] Though the investigator identified three Bitkub wallets that received funds from Defendants' alleged fraud, Licht's motion does not ask the Court to freeze those three wallets. Docs. 6 at 28–29; 5 at 3–4.

[12] Doc. 6 at 23–25 (nine Binance wallets), 25–27 (five OKX wallets), 27–28 (two Huobi wallets), 29–30 (two FTX wallets), 30 (one Yolo wallet), 31 (one B2C2 wallet). Regarding the FTX wallets, the investigator acknowledged FTX's recent catastrophic collapse and reasoned that, should the FTX wallet owners retain or recover any assets, Licht would be a creditor to those assets as FTX's bankruptcy unfolds. *Id.* at 30.

third parties who transacted with the alleged fraudsters, and expresses his belief that "[t]he Binance, OKX, Huobi, and Bitkub accounts . . . are generally the most suspicious (some more so than others)."[13] Nonetheless, the data in his report justifies his confidence that all the wallets have received stolen funds and are "relatively closely linked to the fraud," and that even wallets not registered to the alleged fraudsters are likely "intermediary addresses" used in "an obfuscation effort."[14] The Court agrees with Licht that freezing these wallets is the proper relief.

Thus, the Court **ORDERS** that the following cryptocurrency wallets at the corresponding exchanges or platforms be frozen immediately, and remain frozen until the Court orders otherwise or this case goes to trial:

| Name of Exchange or Platform | Exchange or Platform Deposit Address |
|---|---|
| Binance | 0x250e8ac97e54b7f92a0428fa1f5cb78a03053624 |
| Binance | 0xd4e295af4ca1662485bbef448c7773e27cf54158 |
| Binance | 0xea5331f5f39c6e3801e4fd63d99e75b2a527d032 |
| Binance | 0x0xA1c1eC2243FCff4f61681f79c69451F2FA6EbF82 |
| Binance | 0xa1dd1d2b9af00e93db3593096441425e9d9a83da |
| Binance | 0x37b8804e7752afd06a932ce7a76516d2e7ceec89 |
| Binance | 0x848c23684c817a8c4351ab903cb33b30fc8fa761 |
| Binance | 0xea49d4d99e9de3acdce8ba59a903f1ce9e8323d8 |
| Binance | 0x192cf96bdd66e5b6ffad7c1a6250fa66a40681c9 |
| OKX | 0x4daa5e56b5855f43036e896d22d9156f2ce368ec |
| OKX | 0x8bc175a0da8a7900049d3a0180cab4e1c8166d68 |
| OKX | 0xaa8062bde8f8f114626515d4c0f5fa65712476be |
| OKX | 0x590de531c5d172e0e2b982c47823ec2fc632ee42 |

---

[13] *Id.* at 31.

[14] *Id.* at 23.

| OKX | 0x625871ac5bd95d753bc6119fb701be0c436a7032 |
| Huobi | 0x19813E395E1e5062F981597b3894d1b3920785F7 |
| Huobi | 0xf8b43d9f0fdaf234256d53e8e409b0b01dfbb37f |
| FTX | 0x089830e40363401a6dda0bf093da8efe0240fd71 |
| FTX | 0xa59712cde1c7781ec2f745611dd4a37791b3f9ce |
| Yolo | 0xd5e5bcd233582a6558dd163130c5e1f3eb45ca50 |
| B2C2 | 0x2BD179b1800e0afa087CEda12A1Dd26e5DA53CfB |

The Court **ORDERS** Licht to cause a copy of this Order to be served on these above-listed entities (the "Affected Entities") in a manner compliant with Rule 4 or as the Court may further direct. Upon receiving a copy of this Order, the Affected Entities shall be restrained and enjoined from disbursing assets, directly or indirectly, to or on behalf of Defendants or any entities under Defendants' control. The Court further **ORDERS** Licht to serve a copy of this Order on Defendants, and gives permission to serve them via WhatsApp for the reasons stated in previous orders. The Court directs Licht to inform the Court on the day he effects notice of this Order on the Affected Entities and Defendants.

Additionally, the Court **ORDERS** that all movement, alteration, or destruction of books, records, and accounts related to the above-listed wallets is prohibited. Accordingly, Defendants and the Affected Entities shall be restrained and enjoined from destroying, altering, or concealing any documents, accounts, passwords, cryptographic keys, instruments, or data relating in any manner to the wallets listed above or the subject-matter of this lawsuit.

Finally, the Court **ORDERS** expedited discovery to speedily identify the Defendants, as well as to promote efficient and just resolution of this dispute. Licht

shall comply with Rule 45 regarding subpoenas, and any party served with a written request for production shall produce all requested items within 72 hours of the request. Depositions may be conducted subject to a minimum advance notice of 72 hours.

### III. Conclusion

The Court **GRANTS** Licht's request for a preliminary injunction and **ORDERS** that, in accordance with the Court's directions above, the above-listed wallets be frozen, that all movement, alteration, or destruction of books, records, and accounts related to the above-listed wallets is prohibited, and that the parties shall conduct expedited discovery. The preliminary injunction shall continue until trial.

The Court further **ORDERS** the clerk of court to return Licht's bond in full.

**IT IS SO ORDERED** this 20th day of June, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE