UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEONARD TERRY LICHT,<br>    *Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. 3:23-CV-1018-X |
| TINA LING and LUXKEY,<br>    *Defendants*. | §<br>§<br>§ | |

### MEMORANDUM OPINION, ORDER, AND FINAL JUDGMENT

Plaintiff Leonard Terry Licht invested $2,755,000 in what he thought was a cryptocurrency mining pool with defendants Tina Ling and Luxkey. But Ling and Luxkey were mining him, not crypto. Licht sued Ling and Luxkey for securities fraud, fraud, conversion, and a violation of the Texas Theft Liability Act. The defendants never appeared, including at the preliminary injunction hearing. The Court previously entered a preliminary injunction. Licht now moves for a default judgment that includes a damages award, a permanent injunction on the cryptocurrency wallets, and pre- and post-judgment interest (Doc. 33). For the reasons below, the Court **GRANTS** the motion for default judgment and enters judgment in favor of Licht.

### I. Background

In June 2021, a few years after his wife's death, Licht received a Facebook message from a woman named Tina Ling. Licht and Ling conversed for several months via the Facebook HangOuts app. Eventually, at Ling's urging, Licht agreed

to become a passive investor in a cryptocurrency mining pool—or so he thought. Ling introduced Licht to Luxkey, an online enterprise that she assured him would safely facilitate his investment and ensure his principal was never at risk. Ling instructed Licht about downloading the Coinbase app, which displayed what appeared to be the yields of his mining investments. Encouraged, Licht continued investing.

Once Licht had invested $500,000 in Luxkey, things started to go south. Ling told Licht—for the first time—that he had to invest at least $2,000,000 or he'd risk being charged fees and fines. Licht complied. Then, Ling and others at Luxkey told Licht he owed a "miner's fee" of 20%, or $400,000. Worried, Licht paid it. Ling offered to loan Licht $100,000 to pay the fee and Licht accepted. Then, others at Luxkey admonished Licht that such a loan was not permitted and fined him another $300,000. When Licht contacted Luxkey about the fine, he was told that he owed an additional $400,000, but at that point, having invested almost all of his life savings, Licht could pay no more.

At this point, things took a dark—if sadly predictable—turn. Luxkey informed Licht that his funds would be frozen and distributed to the other investors in the cryptocurrency mining pool. His Coinbase wallet was remotely accessed, and his funds were transferred away. It is now clear to Licht that the "mining pool" never existed, Licht was the only member, and the entire enterprise was designed to maximize Licht's investment before stealing it.

All told, Licht invested $2,755,000 in Luxkey and he lost every dollar. In his declaration, Licht states that he never would have invested in Luxkey if he'd known

that his "principal would be at risk, that there would be minimum investment amounts, or that there would be fines or other charges."[1]

Licht hired a "blockchain forensics and cybercrime investigative firm" to trace the stolen funds.[2] The investigation yielded the addresses of several specific cryptocurrency wallets located across various cryptocurrency exchanges or platforms.

Licht sued Ling and Luxkey, alleging (1) violation of Section 10(b) and 10b-5 of the Securities Exchange Act of 1934, (2) fraud, (3) conversion, and (4) violation of the Texas Theft Liability Act.[3]

The Court's preliminary injunction ordered: the freezing of cryptocurrency wallets at issue; that all movement, alteration, or destruction of books, records, and accounts related to the above-listed wallets is prohibited; and that the parties conduct expedited discovery. Licht ultimately obtained a clerk's default and moved for default judgment.

## II. Legal Standards

Federal Rule of Civil Procedure 55(b)(2) provides that, in proceedings not involving a certain sum:

> the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—

---

[1] Doc. 6 at 5.

[2] Doc. 6 at 11.

[3] Doc. 1 at 4–6.

when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.[4]

A default requires a court to accept as true a plaintiff's well-pled allegations in a complaint.[5]

In determining whether to enter a default judgment, courts conduct a two-part analysis. First, courts examine whether a default judgment is appropriate under the circumstances.[6] Relevant factors (called the *Lindsey* factors) include: (1) whether disputes of material fact exist; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would be obliged to grant a motion from the defendant to set the default judgment aside.[7] Second, the Court assesses the merits of the plaintiff's claims and whether there is a sufficient basis in the pleadings.[8]

### III. Application

The Court deems the facts on liability to be admitted and finds Ling not to be

---

[4] Fed. R. Civ. P. 55(b)(2).

[5] *See, e.g.*, *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015) (a complaint is well-pled when "all elements of [a] cause of action are present by implication"); *In re Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("It is universally understood that a default operates as a deemed admission of liability.").

[6] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[7] *Id.*

[8] *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

incompetent, a minor, or on active-duty status with the Uniformed Services of the United States of America.[9] And while Rule 55 allows for hearings, it does not command them. Licht's motion is supported by the prior sworn preliminary injunction evidence on damages. As a result, a ruling without an additional hearing is proper.

### A. Procedural Appropriateness of Default Judgment

The Court now turns to the six *Lindsey* factors. First, there are no material facts in dispute because the defendants have not filed any responsive pleading. Second, regarding substantial prejudice, the defendants' failure to respond could bring adversarial proceedings to a halt and substantially prejudice Licht, but not themselves. Licht first filed his complaint in May 2023. Third, the defendants' continual failure to respond or participate in this litigation clearly establishes grounds for the default. Fourth, regarding mistake or neglect, there is no reason to believe the defendants are acting under a good faith mistake or excusable neglect. Fifth, regarding the harshness of a default judgment, the Court is only awarding actual damages in the amount of the defendants' theft (as well as interest). The sixth factor is whether the Court would grant a motion to set aside the default. The pleadings, the lack of response, and, consequentially, the failure to plead a meritorious defense indicate a lack of good cause for the Court to set aside the default judgment. Thus, the Court concludes a default judgment is appropriate under these

---

[9] As the declaration from Licht's counsel points out, the lack of a date of birth for Ling means we cannot adequately search whether she is in active service. But Licht's status as a foreign national in Cambodia enables the Court to make this finding.

circumstances.

## B. Sufficiency of Licht's Claims

Next, the Court must assess the merits of Licht's claims. Licht seeks a permanent injunction that mirrors the Court's preliminary injunction. The Court concludes its prior analysis for preliminary injunctive relief still controls and warrants permanent injunctive relief freezing the crypto wallets at issue.

In addition to injunctive relief, Licht seeks damages in the amount that he invested with Ling and Luxkey. While Licht brought four claims, the Court needs to assess only one successful claim. One of Licht's claims is for a violation of the Texas Theft Liability Act. Licht must prove that Ling and Luxkey committed theft,[10] defined as when one "unlawfully appropriates property with intent to deprive the owner of property."[11] And such an action is unlawful if "it is without the owner's effective consent."[12] The complaint alleges the defendants took Licht's cryptocurrency investments without his effective consent. Thus, Licht adequately pleads his Texas Theft Liability Act cause of action.

## B. Damages

Licht's declaration establishes that he sent Ling and Luxkey $2,755,000 for investment (and they violated the Texas Theft Liability Act by not returning it). Thus, the Court awards actual damages of $2,755,000, jointly and severally against

---

[10] Tex. Civ. Prac. & Rem. Code § 134.003(a) ("A person who commits theft is liable for the damages resulting from the theft.").

[11] Tex. Pen. Code § 31.03(a).

[12] *Id.* § 31.03(b)(1).

the defendants.

Licht is also entitled to pre-judgment interest.  As the Texas Theft Liability Act is here on diversity jurisdiction, state law governs an award of pre-judgment interest.[13]  Under Texas law, "an equitable award of pre[-]judgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances."[14]  In this case, pre-judgment interest began to accrue the date Licht filed suit: May 8, 2023.[15]  Under Texas common law, equitable pre-judgment interest accrues at the applicable rate for Texas's post-judgment interest rates.[16]  The current post-judgment interest rate in Texas is 7.5%.[17]  Pre-judgment interest should run from May 8, 2023, the date Licht filed suit, to the day before the date of this judgment, which amounts to $447,718.76 when compounded annually.[18]

Licht is also entitled to costs of Court.  He should file a bill of costs within 14 days.

If Licht seeks attorney's fees,[19] he must file a motion with supporting evidence within 14 days of the date of this judgment.

---

[13] *Meaux Surface Prot., Inc. v. Fogelman*, 607 F.3d 161, 172 (5th Cir. 2010).

[14] *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir. 1996) (cleaned up).

[15] *See, e.g.*, *Craig v. GACP II, L.P.*, No. 3:19-CV 0058-G, 2022 WL 1778392, at *8 (N.D. Tex. Jun. 1, 2022) (Fish, J.).

[16] *See id.*; *see also* Tex. Fin. Code § 304.003.

[17] *See* Interest Rates, Tex. Off. of Consumer Credit Comm'r (June 3, 2025), https://occc.texas.gov/publications/interest-rates [https://perma.cc/98V7-4LD8].

[18] May 8, 2023, to June 4, 2025, is 759 days.  And this amount should be compounded annually. *See* Tex. Fin. Code § 304.006.  So daily pre-judgment interest is $566.10 a day for year one ($206,626.50 for year-one interest), $608.55 a day for year two ($222,120.75 for year-two interest), and $654.19 a day for the final 29 days ($18,971.51).

[19] Tex. Civ. Prac. & Rem. Code § 134.005(b).

Finally, Licht is entitled to post-judgment interest as allowed by law, which is 4.12%.[20] This accrues on pre-judgment interest and damages.

### C. Injunction

The Court also converts its preliminary injunction to a permanent injunction and **ORDERS** that the following cryptocurrency wallets at the corresponding exchanges or platforms be frozen immediately, and remain frozen until Licht is able to access and recover the stolen funds contained therein:

| Name of Exchange or Platform | Exchange or Platform Deposit Address |
|---|---|
| Binance | 0x250e8ac97e54b7f92a0428fa1f5cb78a03053624 |
| Binance | 0xd4e295af4ca1662485bbef448c7773e27cf54158 |
| Binance | 0xea5331f5f39c6e3801e4fd63d99e75b2a527d032 |
| Binance | 0x0xA1c1eC2243FCff4f61681f79c69451F2FA6EbF82 |
| Binance | 0xa1dd1d2b9af00e93db3593096441425e9d9a83da |
| Binance | 0x37b8804e7752afd06a932ce7a76516d2e7ceec89 |
| Binance | 0x848c23684c817a8c4351ab903cb33b30fc8fa761 |
| Binance | 0xea49d4d99e9de3acdce8ba59a903f1ce9e8323d8 |
| Binance | 0x192cf96bdd66e5b6ffad7c1a6250fa66a40681c9 |
| OKX | 0x4daa5e56b5855f43036e896d22d9156f2ce368ec |
| OKX | 0x8bc175a0da8a7900049d3a0180cab4e1c8166d68 |
| OKX | 0xaa8062bde8f8f114626515d4c0f5fa65712476be |
| OKX | 0x590de531c5d172e0e2b982c47823ec2fc632ee42 |
| OKX | 0x625871ac5bd95d753bc6119fb701be0c436a7032 |

---

[20] *See* 18 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."). The 1-year average Treasury yield on June 2, 2025 was 4.12%. *See* Selected Interest Rates (Daily) - H.15, Board of Governors of the Fed. Rsrv. Sys. (June 3, 2025), https://www.federalreserve.gov/releases/h15 [https://perma.cc/8KCP-FCTQ].

| Huobi | 0x19813E395E1e5062F981597b3894d1b3920785F7 |
| --- | --- |
| Huobi | 0xf8b43d9f0fdaf234256d53e8e409b0b01dfbb37f |
| FTX | 0x089830e40363401a6dda0bf093da8efe0240fd71 |
| FTX | 0xa59712cde1c7781ec2f745611dd4a37791b3f9ce |
| Yolo | 0xd5e5bcd233582a6558dd163130c5e1f3eb45ca50 |
| B2C2 | 0x2BD179b1800e0afa087CEda12A1Dd26e5DA53CfB |

The Court **ORDERS** that all movement, alteration, or destruction of books, records, and accounts related to the above-listed wallets is prohibited. Accordingly, the defendants and the exchanges shall be restrained and enjoined from destroying, altering, or concealing any documents, accounts, passwords, cryptographic keys, instruments, or data relating in any manner to the wallets listed above or the subject-matter of this lawsuit.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Licht's motion for default judgment jointly and severally against the defendants. The Court awards Licht $2,755,000 in actual damages, $447,718.76 in pre-judgment interest, post-judgment interest at 4.12%, and the injunctive relief specified above. Licht shall file a bill of costs and a motion for attorney's fees within 14 days of the date of this order. This is a final judgment. All other relief not expressly granted is denied.

**IT IS SO ORDERED** this 5th day of June, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE